# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | **04 C 2028** | **DATE** | NOV. 5 , 2004 |
| **CASE TITLE** | JAMES DUBOIS v. THE PAUL REVERE LIFE INSURANCE COMPANY | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for summary judgment [8] is denied. The Clerk of the Court is directed to enter judgment in favor of plaintiff and against defendant ordering that, within 45 days of the entry of judgment, defendant (a) reinstate plaintiff's disability benefits and (b) pay plaintiff back disability benefits from April 10, 2001 until the reinstatement date.

(11) ■ [For further detail see Memorandum Opinion and Order attached to this original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | **2** number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | NOV ^ ^ 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | Nov. 5, 2004 | |
| cw | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mqm mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES DUBOIS,                          )
                                       )
              Plaintiff,               )
                                       )
      v.                               )      No. 04 C 2028
                                       )
THE PAUL REVERE LIFE INSURANCE         )
COMPANY,                               )
                                       )
              Defendant.               )

## MEMORANDUM OPINION AND ORDER

Plaintiff James Dubois worked as a machine shop
supervisor for Sloan Valve Company, a manufacturer of plumbing
equipment.  Sloan has a long term disability plan which is
administered by defendant The Paul Revere Life Insurance Company
(the "Revere Plan").  In late 1994, plaintiff was diagnosed as
having a herniated disk.  From January 1995 through April 1999,
plaintiff had four surgeries on his spinal column.  From some
time after 1994 until September 23, 1999, plaintiff received
temporary total disability benefits through Sloan's workers'
compensation program.  Effective February 9, 1998, the same date
on which he had his first spinal fusion, plaintiff was found
qualified for social security disability benefits.  In January
2000, plaintiff applied for disability benefits under the Revere

Plan, claiming to be disabled due to a lower back injury since February 9, 1998. Under a reservation of right and taking into account an applicable elimination period, plaintiff was paid disability benefits effective July 9, 1998. In a determination dated April 5, 2001, however, defendant found that plaintiff was no longer directly disabled due to his back problems, but was then prevented from working due to an addiction to prescription narcotics prescribed for pain related to his back problems. Benefits were discontinued, effective April 9, 2001, based on plaintiff having exceeded the 24-month limit for a disability caused by drug abuse. Two subsequent appeals were denied.

The parties agree that plaintiff has exhausted his administrative remedies. They also agree that the Revere Plan is an employee benefit plan to which the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., applies. Further, the parties agree that the Revere Plan accords defendant discretion in determining who is entitled to benefits under the Plan and therefore plaintiff's challenge to defendant's determination is subject to an "arbitrary and capricious" standard of review. While plaintiff continues to disagree with the determination that his back problems themselves do not prevent him from working and notes that there was evidence supporting his claim, he does not contend that defendant's contrary finding was arbitrary and capricious. Instead,

plaintiff contends that defendant's application of the Revere

Plan's drug abuse limitation was arbitrary and capricious.

> Arbitrary and capricious review

> is, of course, a deferential standard of review.
> Under the arbitrary and capricious standard, a
> plan administrator's decision should not be
> overturned as long as (1) "it is possible to offer
> a reasoned explanation, based on the evidence, for
> a particular outcome," (2) the decision "is based
> on a reasonable explanation of relevant plan
> documents," or (3) the administrator "has based
> its decision on a consideration of the relevant
> factors that encompass the important aspects of
> the problem." Exbom v. Central States, Southeast
> & Southwest Areas Health and Welfare Fund, 900
> F.2d 1138, 1142-43 (7th Cir. 1990) (citations
> omitted). Nevertheless, "[d]eferential review is
> not no review," and "deference need not be
> abject." Gallo v. Amoco Corp., 102 F.3d 918, 922
> (7th Cir. 1996). In some cases, the plain
> language or structure of the plan or simple common
> sense will require the court to pronounce an
> administrator's determination arbitrary and
> capricious. Id.

Hess v. Hartford Life & Accident Insurance Co., 274 F.3d 456, 461

(7th Cir. 2001). The decision of the administrator will not be

upheld where there is an absence of reasoning supporting the

determination. Hackett v. Xerox Corp. Long-Term Disability

Income Plan, 315 F.3d 771, 774-75 (7th Cir. 2003). The

administrator "must articulate a rational connection between the

facts found, the issue to be decided, and the choice made."

Dabertin v. HCR Manor Care, Inc., 373 F.3d 822, 828 (7th Cir.

2004). Also, a determination may be arbitrary and capricious

where the administrator has disregarded the submissions of the claimant. Hess, 274 F.3d at 463.

Under arbitrary and capricious review, review of a plan's decision is generally limited to evidence or information that was before the reviewing body. Id. at 462; Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan, 195 F.3d 975, 982 (7th Cir. 1999); Bahnaman v. Lucent Technologies, Inc., 219 F. Supp. 2d 921, 925 (N.D. Ill. 2002). Although defendant's motion is a summary judgment motion, actually before the court is administrative review of defendant's decisions with the administrative records being the essential uncontested fact. Evidence that was outside the administrative record is only appropriate to consider if it goes to procedural issues such as exhaustion, in which case the usual summary judgment rules would be applied in determining if there are any material factual disputes. See Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 619 (6th Cir. 1998); Shyman v. UNUM Life Insurance Co. of America, 2004 WL 609280 *2 (N.D. Ill. March 25, 2004); Sisto v. Ameritech Sickness & Accident Disability Benefit Plan, 2003 WL 22472022 *2 (N.D. Ill. Oct. 31, 2003); Eriksen v. Metropolitan Life Insurance Co., 39 F. Supp. 2d 864, 866 n.2 (E.D. Mich. 1999). Cf. Perlman, 195 F.3d at 982 (outside facts could be considered if a Plan was accused of not doing what it said it did).

Plaintiff claims he is disabled from performing his work

as a machine shop supervisor. The Revere Plan defines total

disability from performing the employee's occupation as follows:

> <u>Totally disabled from your own occupation or</u>
> <u>total disability from your own occupation</u> means:
>
> 1. because of injury or sickness, you cannot
>    perform the important duties of your own
>    occupation;
>
> 2. you are receiving Doctor's Care. We will
>    waive this requirement if we receive written
>    proof acceptable to us that further Doctor's
>    Care would be of no benefit to you; and
>
> 3. you do not work at all.

Def. Exh. B at 9.

The Revere Plan includes the following limitation on

disability benefits.

> For any disability which is caused by a
> psychiatric disorder, alcoholism, drug abuse or
> the use of any drug other than one administered
> on a doctor's advice, benefits are payable for up
> to twenty-four months whether or not you are
> hospital confined. After twenty-four months,
> subject to all other policy provisions, we pay
> benefits only if you continue to be hospital
> confined due to the disability, and for up to
> three months after the date you are no longer
> confined. . . .

Id. at 26. The Plan defines "hospital confined" and "psychiatric

disorder," id., but "drug abuse" is not further defined.

Defendant's April 5, 2001 determination letter (Def. Exh.

C at 807-05) accepts the findings contained in the lengthy report

of independent medical examiner Dr. J.S. Player, which had also

been reviewed and accepted by defendant's medical department.

The determination letter notes Dr. Player's findings that

plaintiff inconsistently reported pain and "demonstrated symptom

magnification and overstatement of pain."  Def. Exh. C at 807.

It was found that plaintiff had no physical limitation preventing

him from performing sedentary or light duty with a 25-pound

weight lifting restriction.  It was further found:

> Since you are able to lift up to 25 pounds,
> you are capable, from a physical standpoint, of
> performing your occupation as it only requires
> lifting up to 20 pounds occasionally.  However,
> Dr. Player reports that, "the examinee admitted
> that he has ingested Vicodin on a daily basis at
> a frequency of 6-8 to 12 pills per day since
> 1995.  In this regard, the examinee is addicted
> to this narcotic analgesic and is currently
> substituting methadone for his hydrocodone
> addiction.  The examinee should not return to
> work until he has entered a rehabilitation
> program and has resolved his addiction to
> narcotics.  His addiction to narcotics is the
> primary reason for his failure to recover."

Id. at 806.

After quoting the language of the 24-month limitation,

the April 2001 determination concluded:

> Dr. Player has reported that the reason you
> are unable to return to work is due to your
> narcotic addiction.  You have been paid benefits
> for a period of July 9, 1998 to April 9, 2001
> under reservation of rights.  Therefore, the
> twenty four month limitation as stated above
> expired on July 9, 2000.

Since you have not been hospital confined as stated in the policy provision above, the benefit

period for disability due to drug abuse has been exhausted, and as such, no further benefits are payable.

Id. at 805.

Plaintiff was advised of his right to seek further review and appeal, including the right to comment on the decision and/or submit additional documentation. Still proceeding pro se, plaintiff timely sought review and an appeal. He submitted additional materials from his treating physicians and questioned accepting Dr. Player's opinion based on a single 25-minute examination instead of the opinions of physicians who had examined plaintiff numerous times and plaintiff's own subjective testimony as to his pain. Regarding his use of pain medication, plaintiff stated:

> First and foremost let me address Dr. Player's opinion of my medication and usage of. I strictly abide by my Doctors' recommendations as they pertain to the dosage and type of medication. As if dealing with my pain is not enough, use of pain medication has serious long term effects to internal organs such as my liver, which must also be closely monitored. I have had to alternate medication types to minimize such long term damages. In most cases, if there has been ANY deviation, it has been MY decision to request my Doctor to reduce the recommended dosage or, in some cases, to completely abandon the particular medication because of its adverse effects on my mental and physical well being. To

> be honest, some times I am not sure which are the
> lesser of the two evils. My usage of medications
> are NOT for recreational pleasures.

Id. at 825 (some typographical or grammatical errors have been
corrected without notation).

The author of the April 2001 determination letter did not
change her decision on further review, so the case was forwarded
to Appeals. See id. at 826. In a determination letter dated
October 3, 2001 (id. at 834-32), the initial decision to
terminate benefits was upheld on appeal. The October 2001
determination acknowledges that some evidence supports
plaintiff's contentions. However, it explains that, based on the
review of defendant's medical consultant, the record supported
that, although plaintiff had back problems, he was still able to
perform light work. See id. at 833-32. The October 2001
determination mischaracterizes the April 2001 decision as having
found that plaintiff was not disabled from performing the duties
of his occupation. Id. at 834. Instead, the April 2001
determination had adopted Dr. Player's finding that plaintiff
could not perform his job duties because of his narcotics
addiction and denied benefits based on exhausting the 24-month
limitation, not based on being capable of performing job duties.
Moreover, although the issue was raised in plaintiff's appeal,
the October 2001 decision did not, in any way, address the issue

of the use of narcotics. It did not, in any way, acknowledge that, although Dr. Player found no physical limitation preventing plaintiff from working, he also found that plaintiff could not work due to the use of narcotics. The October 2001 determination offered plaintiff the opportunity to submit further documentation and stated that additional information would be requested from plaintiff's treating physicians, including the opportunity to comment on Dr. Player's report.

Both treating physicians submitted some additional materials that were considered in a second appellate determination dated November 16, 2001 (id. at 853-52). The additional materials were provided to a board-certified physiatrist for review. The second appellate determination makes passing reference to the treating physicians referring to narcotics use and other medical evidence. It concludes:

> . . . This information did not alter our previous conclusion that your condition is not of such a severe nature that you would be prevented from performing sedentary to light exertional activities with a twenty (25) [sic] pound lifting restriction. Light exertional activity was previously defined in the enclosed notice dated October 3, 2001. Your occupation as a Shop Foreman is considered a light occupation.
> In sum, it has been rightly determined that you are not disabled as defined by the policy from performing the duties of your occupation as a Machine Shop Foreman. Consequently, no further benefits are due or payable on this claim. . . .

Id. at 852. The November 16, 2001 determination does not expressly address or discuss the narcotics issue.

The issue presently raised in this case is not whether there was sufficient evidence supporting that plaintiff's back problems do not physically restrict him from performing his occupation. The issues presently raised by plaintiff are whether defendant adequately considered plaintiff's use of prescribed narcotics and/or acted reasonably in construing and applying the 24-month, drug-abuse limitation. The initial April 2001 determination found that plaintiff was unable to perform his former occupation because of a "narcotic addiction" and implicitly determines, without any express discussion, that this addiction constitutes "drug abuse" as that term is used in the 24-month limitation provision. On review and appeal, plaintiff challenged the determination that his use of prescribed narcotics constituted drug abuse subject to the limitation.[1] However, neither of the appellate determinations addresses the narcotics issue. Additionally, although the appellate determinations

---

[1]Although the narcotics issue was not artfully raised by plaintiff, who was then proceeding without the assistance of counsel, he did challenge both the finding of addiction and the applicability of the 24-month limitation. Moreover, even if not raised, it is sufficient that the evidence supporting this issue was before the administrator and that plaintiff exhausted his claim for benefits. See Sisto, 2003 WL 22472022 at *7; Bahnaman, 219 F. Supp. 2d at 925. In any event, defendant does not contend that any issue presently raised by plaintiff is waived because not adequately raised during the administrative proceedings.

recite that they are upholding the initial April 2001
determination, they incorrectly characterize the initial
determination as finding that plaintiff could perform the
work of a machine shop supervisor, ignoring that the initial
determination instead adopted Dr. Player's finding that narcotics
use prevented plaintiff from being able to perform the work.

None of defendant's determination letters adequately
address the question of plaintiff's narcotics use.  The initial
determination did find that plaintiff was addicted to narcotics.
However, that determination fails to address whether addiction to
prescribed narcotics should be considered drug abuse as that term
is used in the Revere Plan.  It is not obvious that becoming
addicted to prescribed narcotics constitutes drug abuse.

Under the definitions contained in <u>Black's Law</u>
<u>Dictionary</u>, such addiction does not constitute drug abuse.  <u>See</u>
<u>Black's Law Dictionary</u> 536 (8th ed. 2004) (**"drug abuse.**  The
detrimental state produced by the repeated consumption of a
narcotic or other potentially dangerous drug, <u>other than</u>
<u>as prescribed by a doctor to treat an illness or other</u>
<u>medical condition.</u>") (emphasis added).  <u>See also</u> <u>id.</u> at 41
(**addiction.**  1. The habitual and intemperate use of a substance,
esp. a potentially harmful one such as a narcotic drug.  •  The
usual requisites are (1) an emotional dependence that leads to

compulsiveness; (2) an enhanced tolerance of the substance,

leading to more potent doses; and (3) physical dependence such

that withdrawal symptoms result from deprivation."). The

Diagnostic and Statistical Manual of Mental Disorders (4th ed.

Text. Rev. 2000) ("DSM-IV-TR"), which defendant cites in its

reply brief and refers to as "the authoritative diagnostic

handbook for mental disorders in the United States," precludes a

finding of "substance abuse" if the individual is found to have

"substance dependence." DSM-IV-TR at 198-99 (features and

criteria for substance abuse). See also id. at 192-98 (features

and criteria for substance dependence), 270-71 (opioid

dependence), 271 (opioid abuse). The citations to these

definitions are not meant to imply that defendant, as plan

administrator, was bound to follow any of them. They are only

cited to show that it is readily possible that "drug abuse," as

used in the Revere Plan, could be construed as not including the

situation of an individual who became addicted to narcotics that

were being prescribed to treat pain. Also, the Revere Plan

refers to "a psychiatric disorder, alcoholism, drug abuse or the

use of any drug other than one administered on a doctor's advice"

(emphasis added). While the underlined phrase should probably be

read as only modifying "any drug" and not "drug abuse" as well, a

decisionmaker construing the meaning of "drug abuse" may properly

construe that term in context and in light of other provisions of

the Revere Plan.  A rational decisionmaker could consider that
the general exclusion of the effects of drugs prescribed by a
doctor would be consistent with construing drug abuse as not
including becoming addicted to prescribed medications.  There is
no indication that defendant actually construed the term "drug
abuse."  The April 2001 initial determination implies, without
any discussion, that plaintiff had a narcotics addiction that
constituted drug abuse.

As the Seventh Circuit has stated, the administrator must
provide "a statement of reasons that allows a clear and precise
understanding of the grounds for the administrator's position
sufficient to permit effective review."  Hackett, 315 F.3d
at 775.  Here, it is not at all evident that the administrator
actually considered whether becoming addicted to prescribed
medications falls within the definition of drug abuse.  Because
the Revere Plan does not expressly define "drug abuse" and
because it is not at all obvious that plaintiff's type of
addiction constitutes drug abuse, it was incumbent upon the
administrator to adequately articulate its decision on this
issue.  The April 2001 determination does not discuss the issue;
the October 2001 appellate determination does not even mention
the drug issue, narcotics, or the 24-month limitation; and the
November 2001 appellate determination makes only passing
reference to narcotics without mentioning drug abuse or the

24-month limitation.  Because of the failure to address the

meaning of "drug abuse" as used in the Revere Plan, the April

2001 determination was an arbitrary and capricious

discontinuation of benefits.

Neither of the appellate determinations address the

applicability of the 24-month limitation nor whether addiction to

prescribed narcotics constitutes drug abuse.  The appellate

determinations simply find that plaintiff was capable of

performing the work of a machine shop supervisor.  The October

2001 determination does not acknowledge that narcotics use was

part of the record and the November 2001 determination makes only

passing reference to evidence of narcotics use without

articulating why the use of narcotics was being found not to

affect plaintiff's ability to work.  Where the decisionmaker

apparently is placing substantial weight on Dr. Player's finding

of the physical capability to perform work, it was especially

incumbent that the decisionmaker also address Dr. Player's

finding that plaintiff could not perform his occupation because

of narcotics use.  See Govindarajan v. FMC Corp., 932 F.2d 634,

637 (7th Cir. 1991) (administrator may not simply rely on

portions of physician's records that supported denying benefits);

Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 695 (7th Cir. 1992)

(administrator must articulate its basis for rejecting contrary

medical evidence); DiPietro v. Prudential Insurance Co. of

America, 2004 WL 626818 *7-8, 11 (N.D. Ill. March 26, 2004)
(selective reliance on medical evidence); Hillock v. Continental
Casualty Co., 2004 WL 434217 *8 (N.D. Ill. March 2, 2004) (same).
This is especially true where, as here, the previous
determination by the administrator had adopted the additional
finding of Dr. Player.

Defendant's decision to discontinue benefits was
arbitrary and capricious. Because this was an improper
discontinuation of benefits, not simply a denial of an initial
application for benefits, the appropriate remedy is to order the
reinstatement of benefits. See Hackett, 315 F.3d at 775-77.
Defendant will be ordered to reinstate benefits and pay any
back benefits that may be due. To the extent plaintiff has
reached an age when he is no longer eligible for disability
benefits, defendant need only pay back benefits covering the
time period until such discontinuation date. Defendant is not
prohibited from instituting new administrative proceedings to
determine whether plaintiff is still disabled and entitled to
further benefits. See id. at 776-77.

IT IS THEREFORE ORDERED that defendant's motion for
summary judgment [8] is denied. The Clerk of the Court is
directed to enter judgment in favor of plaintiff and against
defendant ordering that, within 45 days of the entry of judgment,
defendant (a) reinstate plaintiff's disability benefits and

(b) pay plaintiff back disability benefits from April 10, 2001 until the reinstatement date.

ENTER:

William T. Cort
UNITED STATES DISTRICT JUDGE

DATED: NOVEMBER 5 , 2004